UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH CASWELL,

      Petitioner,

                        CASE NO. 05-CV-72976-DT
v.                       HONORABLE VICTORIA A. ROBERTS
                        UNITED STATES DISTRICT JUDGE

DOUGLAS VASBINDER,

      Respondent.

_____/

**OPINION AND ORDER DENYING THE
PETITION FOR WRIT OF HABEAS CORPUS**

      Joseph Caswell, ("Petitioner"), confined at the Cotton Correctional Facility in Jackson, Michigan, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney Craig A. Daly, Petitioner challenges his conviction for second-degree murder, M.C.L.A. 750.317; and felony-firearm, M.C.L.A. 750.227b. For the reasons stated, the application for writ of habeas corpus is **DENIED.**

**I.  Background**

      A jury convicted Petitioner of the above offenses in the Gratiot County Circuit Court.

      Petitioner's counsel provided a detailed statement of facts in his petition for writ of habeas corpus. Respondent likewise provided a detailed factual summary of the case, which does not essentially conflict with the Petitioner's statement of facts. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See*

1

*Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002).  Because the facts of this case have been repeated numerous times, they need not be repeated here in their entirety; only a brief overview of the facts is required.

The case arose out of an incident which occurred on October 6, 1994 at Petitioner's trailer in Ashely, Michigan.  The victim died from a gunshot wound to the head.  At the time of the shooting, Petitioner and the victim were engaged in an extramarital affair.  Petitioner initially told the police that the gun went off accidentally while it was still in the holster.  Petitioner later gave a conflicting story to the police, in which he told them he was not sure where the gun was when it discharged.  However, a firearm expert testified for the prosecution that the gun had not been fired while it was in the holster, because no firearm residue was found in the holster.  The firearm expert also testified that the weapon was fully operational within factory or industry standards.  The firearm expert further testified that in order for the revolver to fire, the trigger had to be pulled to the rear, because a hammer safety block on the gun would have prevented the gun from discharging accidentally if it had been waved around or even dropped on the ground.  Dr. Ronald Horowitz, the pathologist who performed the autopsy on the victim, testified over objection that he believed the victim was bent over at the time of the shooting.  Finally, the victim's daughter testified that Petitioner had physically assaulted the victim on three prior occasions and had threatened to kill the victim and her entire family on a fourth occasion.  Petitioner testified at trial that the shooting was accidental, although he acknowledged that it took place while he and the victim were arguing.

2

Petitioner claimed that the gun went off accidentally after the victim had pushed him and

he had lost his balance.  Petitioner had not mentioned the victim pushing him in his prior

statements to the police.

Petitioner's conviction was affirmed on direct appeal. *See People v. Caswell*,

187897 (Mich.Ct.App. November 7, 1997); *lv. den.,* 459 Mich. 884; 587 N. W. 2d 499

(1998).

Petitioner then filed a petition for writ of habeas corpus, which was dismissed

without prejudice because it contained claims which had not been exhausted with the

state courts. *Caswell v. Jackson,* No. 99-CV-74310-DT (E.D. Mich. June 12, 2000).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to

M.C.R. 6.500, *et. seq.*  Following oral argument, the trial court denied Petitioner's post-

conviction claims involving jury instructions and ineffective assistance of counsel. (T.

05/27/2003); *See also People v. Caswell,* No. 94-2922-FY (Order After Oral Argument as

to Defendant's Motion for Relief from Judgment of Conviction and Sentence Pursuant to

MCR 6.500 et.seq., Gratiot County Circuit Court, May 27, 2003).  An evidentiary hearing

was conducted on August 19, 2003 concerning Petitioner's claim that the prosecutor

failed to disclose a prior relationship with a juror.  After testimony, the trial court rejected

this claim. (T. 08/19/2003); *See also People v. Caswell,* No. 94-2922-FY (Order Denying

Defendant Motion for Relief from Judgment, Gratiot County Circuit Court, August 27,

2003).  The Michigan appellate courts denied Petitioner leave to appeal. *People v.*

*Caswell,* No. 256980 (Mich.Ct.App. December 16, 2004); *lv. den.,* 472 Mich. 921; 696

3

N.W. 2d 714 (2005); *reconsideration den.* 473 Mich. 886, 699 N.W.2d 699 (2005).

Petitioner now seeks the issuance of a writ of habeas corpus on the following

grounds:

> I. He was denied due process and a fundamentally fair trial by the trial
> court's erroneous evidentiary rulings regarding other crimes evidence.
>
> II. Prosecutorial misconduct denied him a fair trial.
>
> III. He was denied due process of law because there was insufficient
> evidence to sustain a verdict of second-degree murder.
>
> IV. He was denied due process and a fair trial when the trial court gave an
> erroneous instruction on the defense of accidental discharge of the gun,
> gave a coercive instruction that the jury should not compromise in returning
> a verdict, gave a constitutionally flawed reasonable doubt instruction, and
> failed to give a requested instruction on statutory manslaughter.
>
> V. He was denied his right to effective assistance of counsel and his right to
> a fair trial under the federal constitution when his trial lawyer failed to: (A)
> properly investigate and present Petitioner's defense at trial; (B) discover a
> juror's relationship with the prosecutor; and (C) object to erroneous jury
> instructions.
>
> VI. There can be no procedural default when the State court orders are not
> clear expressions that their judgment rests on state procedural grounds, and
> Petitioner has otherwise established entitlement to relief from the judgment
> of conviction and sentence under state law.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or

4

involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the
United States; or
(2)      resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

In reviewing a habeas corpus petition to determine whether the state court decision was based on an unreasonable determination of facts, a federal court applies a presumption of correctness to the factual findings made by the state court. *Warren v. Smith,* 161 F. 3d 358, 360 (6ᵗʰ Cir. 1998). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* at 360-61.

### III.  Discussion

**A. Claim I.  Prior bad acts.**

Petitioner claims that the trial court erred in admitting other crimes evidence

5

concerning his prior assaultive and threatening behavior towards the victim.

The admission of this "bad acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "bad acts" evidence. *Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Moreover, any claim that this "bad acts" evidence was admitted in violation of Michigan law or procedure would not provide a basis for federal habeas relief. *Bugh,* 329 F. 3d at 512. Petitioner is not entitled to habeas relief on his first claim.

### B.  Claim II. Prosecutorial misconduct.

Petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct.

Petitioner says that the prosecutor failed to disclose favorable or exculpatory evidence from Sandra Burgett.  Burgett told the prosecution prior to trial that she did not see any feces on the floor of Petitioner's bedroom when she first entered the room and that the victim only defecated when she was placed on the stretcher by the paramedics, and not at the time that the victim had been shot, as the pathologist speculated.  Burgett, however, gave this testimony when she was called as a defense witness at trial.

The Michigan Court of Appeals rejected Petitioner's claim, noting that the defense was aware of this information and presented Burgett's testimony at trial. *Caswell,* Slip. Op. at * 2.

6

Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  There are three components of a true *Brady* violation: (1) the evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner is not entitled to habeas relief on this claim.  First, the defense was made aware of Burgett's statement at the time of trial.  *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such information. *See United States v. Davis,* 306 F. 3d 398, 421 (6th Cir. 2002).  If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its nondisclosure. *United States v. Word*, 806 F. 2d 658, 665 (6th Cir. 1986); *See also United States v. Benc*s, 28 F. 3d 555, 560-61 (6th Cir. 1994).  The Sixth Circuit noted that "[T]he Supreme Court rejected the claim that the duty to disclose hinges on the usefulness of the material to pretrial preparation.  Such a standard would 'necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense.'" *Bencs,* 28 F. 3d at 560, n. 5 (*quoting Agurs,* 427 U.S. at 112, n. 20).

7

Any claim that the late disclosure of these discovery materials may have precluded defense counsel from adequate trial preparation is non-cognizable pursuant to *Agurs. See Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004)(citing *Bencs,* 28 F. 3d at 561). Moreover, Petitioner was able to present Burgett as a defense witness. Therefore, the prosecutor's failure to turn over Burgett's statement prior to trial did not violate Petitioner's due process rights.

As a related claim, Petitioner contends that the prosecutor presented perjured testimony from Dr. Horowitz concerning the placement of the victim, because it was based on his opinion that the victim defecated at the time that she was shot, whereas Burgett testified that the victim defecated only as she was placed on a stretcher. [1]

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a

---

[1] Respondent contends that Petitioner's remaining prosecutorial misconduct claims are procedurally defaulted. Petitioner claims that his appellate counsel was ineffective for failing to raise his claims in his appeal of right. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). If Petitioner could show that he received ineffective assistance of appellate counsel that rose to the level of a Sixth Amendment violation, it would excuse his procedural default for failing to raise his claims on his direct appeal in the state courts. *Seymour v. Walker*, 224 F. 3d 542, 550 (6th Cir. 2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

8

defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000). A habeas petitioner has the burden of establishing a *Giglio* violation. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).

Petitioner is not entitled to habeas relief. First, the only evidence that he presented in support of his perjury claim is Burgett's testimony that she witnessed the victim defecate only after she was placed on the stretcher. In order to establish that testimony was falsely given, it is not enough for a defendant to simply show that the allegedly false testimony has been challenged by another witness. *See United States v. Brown*, 634 F. 2d 819, 827 (5th Cir. 1981).

Moreover, Dr. Horowitz merely speculated that the victim defecated at the time she was shot, based on his view of a photograph of the crime scene. Petitioner is unable to establish that Dr. Horowitz was deliberately dishonest. Petitioner's perjury claim fails because there is no evidence that Dr. Horowitz knowingly provided scientifically inaccurate testimony. *See Smith v. Massey,* 235 F. 3d 1259, 1272 (10th Cir. 2000).

Additionally, Petitioner's defense counsel on cross-examination and recross examination elicited several admissions from Dr. Horowitz, in which he acknowledged

9

that the sphincter muscles do not always relax immediately at the time a bullet strikes a

victim's head, and that he did not know how long it took the victim's sphincter muscles

to relax after she had been shot. (T. I., pp. 186-187, 191).  In light of the fact that Dr.

Horowitz was impeached by defense counsel on this issue, petitioner was not deprived of

due process. *See e.g. Monroe v. Smith,* 197 F. Supp. 2d 753, 763 (E.D. Mich. 2001).  It

was for the jury to decide which version of the testimony to believe. *Id.*  Petitioner's

perjury claim is without merit.

Petitioner next contends that the prosecutor injected his own personal beliefs into

the case.

A prosecutor may not express a personal opinion concerning the guilt of a

defendant or the credibility of trial witnesses, because such personal assurances of guilt

or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate

advocates' role by improperly inviting the jurors to convict the defendant on a basis

other than a neutral independent assessment of the record proof." *Caldwell v. Russell*,

181 F.3d 731, 737 (6th Cir. 1999).  However, a prosecutor is free to argue that the jury

should arrive at a particular conclusion based upon the record evidence. *Id.*  Even on

direct appeal from a federal conviction, the Sixth Circuit held that to constitute error, a

prosecutor's alleged misconduct of arguing his personal belief in a witness' credibility or

in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,*

287 F. 3d 422, 433 (6th Cir. 2002).

When viewed in context, the overwhelming majority of the prosecutor's

10

comments were based on the record evidence and not on his personal belief concerning the evidence. Moreover, even if these isolated incidents could be construed as vouching, they were only a small part of a thirty two page closing argument and rebuttal which summarized the evidence. (T. IV, pp. 422-44; 481-89). Lastly, the jury was instructed that the lawyers' statements and arguments were not evidence. (*Id.* at 492). This instruction by the court cured any prejudice that may have arisen from improper vouching. *Byrd,* 209 F. 3d at 537.

Petitioner next contends that the prosecutor made an improper "civic duty" argument in his rebuttal argument. With regards to such arguments, the Sixth Circuit noted that, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible." *Byrd,* 209 F. 3d at 539 (*quoting United States v. Solivan*, 937 F. 2d 1146, 1151 (6th Cir.1991)). In this case, the prosecutor's "less than-pointed-remarks" did not rise to the level of remarks designed to incite prejudice in a jury, thus defeating Petitioner's "civic duty" argument claim. *See Puetas v. Overton,* 168 Fed. Appx. 689, 701 (6th Cir. 2006). Petitioner's civic duty argument claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision. (T. IV, p. 489). *See Cameron v. Pitcher*, 2001 WL 85893, * 10 (E.D. Mich. January 4, 2001).

Petitioner next contends that the prosecutor injected various information into his closing argument which had not been introduced into evidence. While it is improper for

11

a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial, *Byrd*, 209 F. 3d at 535, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

A review of the prosecutor's comments shows that the prosecutor merely argued reasonable inferences from the evidence presented. Moreover, because the prosecutor's remarks were only a small part of an argument that focused heavily on summarizing the evidence, and the trial judge informed the jury that the arguments were not evidence, federal habeas relief is not warranted. *Byrd*, 209 F. 3d at 532-33.

Lastly, Petitioner contends that the two prosecutors in his case, Mark Gates and Kristin Kalcher Bakker, failed to disclose that they were friends with Chad Williams, one of the jurors. A lengthy post-conviction evidentiary hearing was conducted on this issue on August 19, 2003. Although Gates, Bakker, and Williams all testified that Williams had been a bartender at a bar frequented by Gates and Bakker, all three denied having anything move than a passing acquaintance. Petitioner called Jose Rodriguez as a witness at this hearing, who testified that Gates, Bakker, and Williams were all friends. Rodriguez had worked at the same bar as Williams. Rodriguez claimed that he had discussed Petitioner's case with Williams during the trial, including discussions about evidence suppressed by the trial court prior to trial. Rodriguez claimed that after the verdict, he, Gates, Bakker and Williams went the bar and celebrated.

However, Rodriguez acknowledged that he met Petitioner in prison, where

Rodriguez is now serving a sentence for criminal sexual conduct. Rodriguez further

acknowledged that he had been prosecuted by the same prosecutor's office that had

prosecuted Petitioner and believed that he had been given a "bad deal." Rodriguez

claimed that he accepted Gates' explanation to him it was normal for Gates to talk with a

juror about the case while it was pending. Rodriguez claimed that it was only after he

had gone to prison, studied the law, and encountered Petitioner that he decided that it

was improper for Williams to sit on this jury. Rodriguez acknowledged, however, that

he never informed Petitioner's trial court judge, another judge, a newspaper, or anyone

else about this alleged impropriety. Rodriguez could not explain why he waited over

five years to disclose his belief that it was improper for Williams to sit on Petitioner's

jury. (T., 08/19/2003, pp. 49, 52, 75-7, 92-101, 114).

In denying Petitioner's claim, the trial court noted that "[T]o a large degree, Mr.

Caswell's motion turns on the credibility of Jose Rodriguez, and the Court is not

favorably impressed with the credibility of Jose Rodriguez for a number of reasons." (*Id.*

at p. 187). The trial court then gave extensive reasons why it disbelieved Rodriguez'

testimony. (*Id.* at pp. 187-190). The trial court concluded that Rodriguez lied about the

events that he testified to, particularly about the social relationship between Williams

and the others, the discussion between Rodriguez and Williams about evidence which

had been suppressed, and the "so-called victory party." (*Id.* at pp. 190-91). The court

concluded that the only thing which had been established from the evidence was that

Williams may have served an occasional drink to the prosecutor. The trial court took the

13

matter under advisement to determine whether this relationship should have been disclosed by the prosecutor during *voir dire*. (*Id.* at p. 192). In a subsequent written order, the trial court noted that Williams had been called to the jury box late in the jury selection process, after there had been extensive questioning. Williams affirmed that he heard the trial court's instructions, had no preconceived notions of the case, and could serve impartially. In response to a question from defense counsel, Williams affirmed Petitioner's presumption of innocence. The trial court concluded that there was no showing that Williams was biased towards the prosecution or that Petitioner was prejudiced by Williams' failure to disclose his acquaintanceship with the prosecutor. *See also People v. Caswell,* No. 94-2922-FY (Order Denying Defendant Motion for Relief from Judgment, Gratiot County Circuit Court, August 27, 2003), Slip. Op. at * 2.

The standard of review on habeas does not permit a court to substitute its view of possible juror bias for the state court's view; a habeas court may only overturn the state court's findings of juror impartiality if those findings were manifestly erroneous. *DeLisle v Rivers*, 161 F. 3d 370, 382 (6th Cir. 1998). A state trial court's finding on the impartiality of a juror or a jury is a factual finding presumed to be correct under § 2254, unless a habeas petitioner can prove otherwise by convincing evidence. *Gall v. Parker,* 231 F. 3d 265, 334 (6th Cir. 2000). In addition, absent clear and convincing evidence to the contrary, a federal habeas court must presume the correctness of a state court's finding that a juror's responses during *voir dire* were not only honest, but factually accurate. *Fitzgerald v. Greene,* 150 F. 3d 357, 364 (4th Cir. 1998).

14

The trial court conducted a lengthy evidentiary hearing, after which it concluded there was no evidence that the prosecutors in this case had a friendly relationship with Chad Williams which needed to be disclosed. In so ruling, the trial court rejected as incredible Jose Rodriguez' testimony. This is a credibility determination which this Court cannot second guess. The trial court further found that Williams indicated during *voir dire* that he could be a fair and unbiased juror. Petitioner failed to present clear and convincing evidence to overcome the trial court's findings.

The presumption that a jury was not impartial is applicable only in extreme instances of juror bias, such as where there is a "revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Smith v. Phillips,* 455 U.S. 209, 222 (1982). Williams' incidental relationship with the prosecutors would not have affected his impartiality, particularly where Williams indicated that he could be fair and impartial. *See Dell v. Straub,* 194 F. Supp. 2d 629, 656 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on his second claim.

**C. Claim III. Sufficiency of evidence.**

Petitioner next contends there was insufficient evidence to convict him of second-degree murder, because the prosecutor failed to prove beyond a reasonable doubt that the shooting was not accidental.

In rejecting Petitioner's claim, the Michigan Court of Appeals noted there was

15

testimony that the victim was in a "ducking position when shot." testimony that the gun could not discharge accidentally, and evidence that Petitioner had been assaultive in the past when discussing marriage with the victim. *Caswell,* Slip. Op. at * 3.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking, --  after viewing the evidence in the light most favorable to the prosecution -- whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  The reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  The determination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review. *See Dillard v. Prelesnik,* 156 F. Supp. 2d 798, 805 (E.D. Mich. 2001).  In addition, the habeas court does not substitute its judgment for that of the finder of fact. *Id.*

Under Michigan law, conviction of second-degree murder requires proof of: (1) a death; (2) caused by an act of the defendant; (3) with malice; and (4) without justification or excuse. *Kelley v. Jackson,* 353 F. Supp. 2d 887, 891 (E.D. Mich. 2005)(citing *People v. Goecke*, 457 Mich. 442, 463-64; 579 N.W. 2d 868 (1998)).  To prove malice, the prosecution must establish that the defendant has the intent to kill or do great bodily harm, or has created and disregarded a very high risk of death. *Id.*  Malice for second-degree murder can be inferred from evidence that the defendant intentionally

16

set in motion a force likely to cause death or great bodily harm. *People v. Djordjevic*, 230 Mich. App. 459, 462; 584 N.W.2d 610 (1998); *See also Hill v. Hofbauer,* 195 F. Supp. 2d 871, 885 (E.D. Mich. 2001). The offense of second-degree murder "does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences." *Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006)(*quoting People v. Mayhew*, 236 Mich. App. 112, 125; 600 N. W. 2d 370 (1999)).

In the present case, there was sufficient evidence for a jury to conclude that the prosecution had proven the elements of second-degree murder beyond a reasonable doubt. Although Petitioner claimed that the shooting was accidental, he gave several conflicting stories about whether the gun was or was not holstered when it discharged. In addition, there was some evidence that the victim may have been in a ducking or defensive position when she was shot. The prosecution's firearm expert testified that there was a hammer safety block on the gun and that the gun could not discharge accidentally. Finally, the victim's daughter testified about several prior incidents in which Petitioner either assaulted the victim or threatened to kill her and her family. The Court concludes that from this evidence, a rational juror could have rejected Petitioner's claim that the shooting was accidental, and concluded that the elements of second-degree murder had been proven beyond a reasonable doubt. Petitioner is therefore not entitled to habeas relief on his sufficiency of evidence claim. *See Draughn v. Jabe,* 803 F. Supp. 70, 79-80 (E.D. Mich. 1992).

17

The Court also rejects Petitioner's related claim that the verdict went against the great weight of evidence. A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004). Such a claim is not of constitutional dimension for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Id.* The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was evidence to support it. *Dell,* 194 F. Supp. 2d at 648. As long as there is sufficient evidence to convict Petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. *Id.* Because there was sufficient evidence to convict Petitioner of second-degree murder, he is not entitled to habeas relief on his third claim.

### D. Claim IV. Jury instructions.

Petitioner claims he was deprived of a fair trial because of erroneous jury instructions.

The Sixth Circuit held that "[g]enerally, a defendant is entitled to jury instructions on defense theories that are supported by law and raised by the evidence presented." *Williams v. Kentucky*, 124 F. 3d 201, 204 (6th Cir. 1997). However, a requested instruction must be supported by sufficient evidence. *Mathews v. United States*, 485 U.S. 58, 63 (1988); *See also Foster v. Withrow,* 159 F. Supp. 2d 629, 643 (E.D. Mich. 2001). Moreover, "[W]hile a defendant is entitled to have a jury instruction on any defense

18

which provides a legal defense to the charge against him, the failure to give such an instruction will not alone mandate the issuance of a writ of habeas corpus." The omission of the instruction must so infect the trial that the resulting conviction violates due process. *See Sanders v. Israel*, 717 F. 2d 422, 425 (7th Cir. 1983)(internal citations omitted). When the issue before the habeas court is the omission of an instruction, a habeas petitioner's burden is especially heavy. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 604 (E.D. Mich. 2001). A conviction will not be overturned even on direct appeal for refusal to give a requested jury charge unless that instruction represents a theory of the defense with a basis in the record that would lead to an acquittal. *Id.*

Petitioner contends that the trial court erred in failing to instruct the jury that the victim's death was accidental, because it was the result of an involuntary act (CJI 2d 7.1). The trial court instructed the jury that if Petitioner did not intend to kill or do great bodily harm or realized that what he did would probably cause death or great bodily harm, he would be not guilty of murder. The trial court later instructed the jury that second-degree murder cannot be an accidental offense. The trial court instructed the jury that if it believed the incident was an accident, they could not return a verdict of guilty, because second-degree murder requires an intent to kill, or an intent to do great bodily harm, or an intent to do something that has a high risk of causing death or great bodily harm. Petitioner, however, claims that the accident instruction was deficient in light of his testimony that the gun discharged as a result of an involuntary act caused when he fell, and he did not have the intent to kill or injure the victim.

19

The instructions adequately informed the jury that it could not find Petitioner guilty of murder if it believed that the shooting was an accident, regardless of whether Petitioner voluntarily or involuntarily discharged the firearm.  Had the jury credited Petitioner's account, the accident instruction would not have permitted the jury to convict Petitioner of murder.  Therefore, the trial court's failure to give an instruction that Petitioner was not guilty of murder because the act itself was entirely involuntary, did not deprive Petitioner of a fair trial. *See e.g. Robinson v. LaFleur,* 225 F. 3d 950, 954 (8th Cir. 2000).  Because the instruction fairly presented the defense of accident to the jury, the trial court's failure to give an additional accident instruction concerning involuntary acts does not entitle Petitioner to habeas relief. *Draughn,* 803 F. Supp. at 75.

Petitioner next claims that the trial court gave the jury a coercive instruction that they should not compromise in reaching a verdict.

While it is true that consistency in verdicts or judgments is not required, *See Hamling v. United States*, 418 U.S. 87, 101 (1974), this Court has not found cases that support the proposition that a jury must be instructed that it has a right to return inconsistent verdicts.  It is both unreasonable and impermissible to provide a jury with an opportunity to render a lenient or compromise verdict with no evidentiary basis. *United States v. Busic*, 592 F. 2d 13, 24 (2nd Cir. 1978); *See also Dukette v. Perrin*, 564 F. Supp. 1530, 1537 (D.N.H. 1983)(no criminal defendant has the constitutional right to insist on a lesser included offense solely to "invoke the mercy-dispensing prerogative of the

20

jury").  Moreover, there is no constitutional right to jury nullification. *See Crease v. McKune*, 189 F. 3d 1188, 1194 (10th Cir. 1999).  Although juries have the power to nullify or to exercise a power or lenity, " it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent." *United States v. Thomas,* 116 F. 3d 606, 615 (2nd Cir. 1997).  The trial court's instruction, therefore, did not deprive Petitioner of a fair trial or violate the federal constitution.

Petitioner next contends that the trial court gave a defective reasonable doubt instruction, because it failed to instruct the jurors that a reasonable doubt could arise from the lack of evidence presented.

Jury instructions must be read in their entirety to ensure that the instructions, read as a whole, correctly convey the reasonable doubt concept to the jury. *Ferrazza v. Tessmer*, 36 F. Supp. 2d 965, 973 (E.D. Mich. 1999).  The proper inquiry for a court reviewing a reasonable doubt instruction is not whether the jury instruction could have been applied unconstitutionally, but whether there is a reasonable likelihood that the jury did apply the jury instruction in an unconstitutional manner. *Victor v. Nebraska*, 511 U.S. 1, 6 (1994).  The Due Process Clause of the Fourteenth Amendment neither prohibits a trial court from defining reasonable doubt nor does it require it to define reasonable doubt as a matter of course, so long as the trial court instructs the jury on the necessity that the defendant's guilt must be proven beyond a reasonable doubt. *Victor,* 511 U.S. at 5; *Ferrazza,* 36 F. Supp. 2d at 973.

The trial court's instruction adequately informed the jurors on reasonable doubt.

The fact that the trial court did not instruct the jurors that a reasonable doubt could arise from a lack of evidence would not render the instruction infirm. *See United States v. Diaz,* 176 F. 3d 52, 101-02 (2nd Cir. 1999)*;United States v. Rogers,* 91 F. 3d 53, 56-57 & n. 2 (8th Cir. 1996); *United States v. Baskin,* 886 F. 2d 383, 388 (D.C. Cir. 1989); *Ashe v. United States,* 288 F. 2d 725, 730 (6th Cir. 1961). Indeed, "[T]hat a lack of evidence may cause one to have a reasonable doubt is self-evident." *Rogers,* 91 F. 3d at 57.

Petitioner next contends that the trial court failed to instruct the jurors on the lesser included offense of statutory manslaughter (CJI 2d 16.11). That instruction advises a jury that a defendant is guilty of manslaughter when death results from a firearm that was intentionally aimed but not intentionally fired. The Michigan Court of Appeals rejected this claim, finding that the instruction was unsupported by the evidence in light of Petitioner's trial testimony in which he denied having intentionally pointed the gun at the victim. *Caswell,* Slip. Op. at * 3.

This Court agrees with that conclusion. Because the evidence at trial did not support the statutory manslaughter instruction, the trial court's failure to give it did not deprive Petitioner of a fair trial. *See Scott v. Elo,* 302 F. 3d 598, 605-06 (6th Cir. 2002). Petitioner is not entitled to habeas relief on his fourth claim.

**E.  Claim V.  Ineffective assistance of counsel.**

Petitioner contends he was deprived of the effective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant

must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

Petitioner contends trial counsel was ineffective for failing to present an expert witness to establish that the shooting was accidental.  In his post-conviction motion, Petitioner presented a report from Dr. Werner Spitz in which Dr. Spitz opined that the shooting was accidental.  Petitioner contends that Dr. Spitz's findings would have rebutted Dr. Horowitz's testimony.

In rejecting this claim, the trial court first indicated that it would not have permitted Dr. Spitz to testify that the discharge of the weapon was accidental, because it would have gone beyond his expertise as a forensic pathologist.  More importantly, the trial court ruled that Dr. Spitz's proposed testimony would not have raised a reasonable

23

2:05-cv-72976-VAR-DAS   Doc # 25   Filed 03/14/07   Pg 24 of 27   Pg ID 2060

doubt that did not otherwise exist in light of the evidence presented at trial. Specifically, the trial court noted that Petitioner gave three different versions of how the shooting occurred, Petitioner had a prior abusive relationship with the victim, and the firearm expert testified that the firearm could not have discharged accidentally. The trial court concluded that in light of this evidence, Dr. Spitz's testimony could not have rebutted a finding that Petitioner knowingly created a high risk of causing death or great bodily harm. (T., 05/27/2003, pp. 36-39).

Defense counsel presented Petitioner's accident defense through the testimony of various prosecution witnesses and Petitioner himself. Moreover, counsel cross-examined Dr. Horowitz extensively about his findings concerning the shooting. Finally, in light of the other evidence presented, including Petitioner's prior assaultive behavior and violent threats towards the victim, the firearms expert's testimony that the gun could not discharge accidentally, and the fact that Petitioner gave three different versions of the shooting, Petitioner failed to show that he was prejudiced by counsel's failure to call an expert to testify that the shooting was accidental. Therefore, the trial court's finding that counsel was not ineffective for failing to call an expert to support his accident defense, was not an unreasonable application of clearly established federal law so as to entitle Petitioner to habeas relief. *See Gattis v. Snyder*, 278 F. 3d 222, 235-37 (3rd Cir. 2002).

Petitioner next contends trial counsel was ineffective for failing to discover juror Chad Williams' relationship with the prosecutors. To maintain a claim that a biased juror prejudiced him -- for purposes of maintaining an ineffective assistance of counsel

24

claim -- a habeas petitioner must show that the juror was actually biased against him. *See Hughes v. United States,* 258 F. 3d 453, 458 (6th Cir. 2001). As discussed above, Petitioner offered no evidence that Chad Williams was actually biased towards him. In the absence of such evidence, Petitioner is unable to establish he was prejudiced by counsel's failure to inquire into Chad Williams' relationship with the prosecutors. *See Riggins v. Butler,* 705 F. Supp. 1205, 1212-13 (E.D. La. 1989).

Lastly, Petitioner contends that counsel was ineffective for failing to object to erroneous jury instructions. Unless Petitioner can demonstrate that the jury instructions given by the trial court violated his due process rights, he cannot show that defense counsel was ineffective for failing to object. *Klvana v. State of Cal.,* 911 F. Supp. 1288, 1296 (C.D. Cal. 1995). Because he failed to make such a showing, Petitioner's ineffective assistance of counsel claim fails also.

Finally, to the extent that Petitioner contends appellate counsel was ineffective for failing to raise some of the claims that he raised in his petition on his direct appeal, his ineffective assistance of appellate counsel claim fails, because these claims are without merit. *See Siebert. v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on his final claim.

## IV. Conclusion

The Court denies the Petition for Writ of Habeas Corpus. The Court also denies a Certificate of Appealability. In order to obtain a certificate of appealability, a prisoner

must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002). A district court thus has the power to deny a certificate of appealability *sua sponte. Grayson v. Grayson,* 185 F. Supp. 2d 747, 753 (E.D. Mich. 2002).

For the reasons stated in this opinion, the Court denies a Certificate of Appealability. Petitioner failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable, or find that he should receive encouragement to proceed further. *Siebert,* 205 F. Supp. 2d at 735.

## V.   ORDER

The Petition for Writ of Habeas Corpus is **DENIED.**

A Certificate of Appealability is **DENIED.**

**IT IS ORDERED**

26

  /s/ Victoria A. Roberts
**HONORABLE VICTORIA A. ROBERTS**
**UNITED STATES DISTRICT JUDGE**

**Dated:** 3/14/07

The undersigned certifies that a copy of this
document was served on the attorneys of
record  by electronic means or U.S. Mail on
March 14, 2007.

s/Linda Vertriest
Deputy Clerk

27